**STEVEN J. ROTHANS-State Bar No. 106579**
**SCOTT CARPENTER-State Bar No. 253339**
**YARON F. DUNKEL-State Bar No. 215873**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
**srothans@crdlaw.com; ydunkel@crdlaw.com;**
**scarpenter@crdlaw.comscarpenter@crdlaw.com**

Attorneys for Defendant,
CITY OF SAN BERNARDINO, a public entity

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ROB MARQUISE ADAMS, by and through its Personal Representatives, TAMIKA KING and ROBERT ADAMS; TAMIKA KING, individually; ROBERT ADAMS, individually. | ) Case No.   5:22-cv-02206-JGB-SP<br>) [Assigned to Hon. Judge Jesus G. Bernal]<br>)<br>) **DEFENDANT CITY OF SAN**<br>) **BERNARDINO'S MOTION TO**<br>) **RECUSE / DISQUALIFY PLAINTIFFS'**<br>) **COUNSEL BRADLEY GAGE AND**<br>) **ALL ATTORNEYS AND EMPLOYEES** |
| Plaintiffs, | ) **AT THE LAW OFFICES OF**<br>) **GOLBERG & GAGE;**<br>) **MEMORANDUM OF POINTS AND** |
| vs. | ) **AUTHORITIES; DECLARATIONS**<br>) |
| CITY OF SAN BERNARDINO, and DOES 1-10, inclusive, | )<br>) |
| Defendants. | ) **Date:        February 27, 2023**<br>) **Time:        9:00 a.m.**<br>) **Courtroom: "1"** |
| | ) |
| _____ | ) |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at on Monday, February 27, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendant City of San Bernardino will move the Court, in Courtroom 1, located at the United States Courthouse, Central District, 3470 Twelfth Street, Riverside, California 92501, for an order disqualifying Plaintiffs' counsel, Bradley Gage and all attorneys and employees at the Law Offices of Goldberg & Gage, from being involved in this litigation in any capacity, and having

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

1   any further contact with Plaintiffs.  Mr. Gage and his firm have an ethical conflict of

2   interest caused by their (1) representation of San Bernardino Lieutenant ████████[1]

3   on his claim that the San Bernardino Police Department discriminated against him by

4   transferring him from Captain to Lieutenant in April of 2022, and (2) concurrent

5   representation of Plaintiffs in this litigation against the City of San Bernardino's police

6   officers and managerial, supervisorial, and policymaking employees' constitutional

7   violations, negligent training, tortious hiring and supervision of personnel, and

8   attempts to destroy evidence.  As the police Captain of Operations until 2022 and since

9   then a Lieutenant in charge of police records, Lieutenant █████ is part of the police

10  department's Command Staff, is a witness to several of Plaintiffs' allegations, and has

11  confidential information about police department's collection and maintenance of

12  evidence, police policies, and police procedures in regard to officer training and

13  investigation of Officer Involved Shooting.   Mr. Gage and his firm's representation

14  of Plaintiffs and the Lieutenant constitutes an ethical violation, and counsel must be

15  disqualified under the California Rules of Professional Conduct. Rule 1.7 (previously

16  Rule 3-310), and well-settled attorney ethical principles that an attorney may not

17  represent even in separate lawsuits one set of plaintiffs when counsel currently or

18  previously represented a client who is a relevant witness to the plaintiffs' allegations.

19         This motion is made following a telephonic meeting and conference pursuant

20  to C.D. Cal. R. 7-3 on January 5, 2023.  The parties could not agree on a resolution

21  without the Court's intervention.  [Dunkel Decl. ¶3.]

22         The motion is based on this notice, the attached memorandum of law and

23  declaration of Chief Darren Goodman, Declaration of Yaron Dunkel, with exhibits,

24  the proposed order lodged herewith, all pleadings and papers on file herein, and on

25  such other evidence and argument as the Court deems appropriate or convenient.

26  / / /

27

28

---

[1] For purpose of protecting his privacy, this motion redacts the name of the San
Bernardino Police Department Lieutenant represented by Plaintiffs' counsel.

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

1  DATED:  January 20, 2023          CARPENTER, ROTHANS & DUMONT
2                                    LLP

3
4                                By:  /s/ *Yaron F. Dunkel*
                                     STEVEN J. ROTHANS
5                                    SCOTT CARPENTER
                                     YARON F. DUNKEL
6                                    Attorneys for Defendant CITY OF SAN
                                     BERNARDINO, a public entity
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

<u>TABLE OF CONTENTS</u>

2

Page:

3
4
I.    PLAINTIFFS' ALLEGATIONS IN THIS LAWSUIT ARE A CONFLICT OF INTEREST FOR  ATTORNEY BRADLEY GAGE AND HIS LAW FIRM ..1

5
6
7
II.   PLAINTIFFS' COUNSEL BRADLEY GAGE ALSO REPRESENTS LIEUTENANT █████████ OF THE SAN BERNARDINO POLICE DEPARTENT WHO IS THE RECORDS MANAGER AND WAS INVOLVED IN ALL ASPECTS OF POLICE OFFICER TRAINING AND HIRING ...................................................................................2

8
9
      A.    Mr. Gage Represents Lieutenant █████ In His Employment Claims Against The City For Wrongfully Transferring Him From Captain of Operations Division To Lieutenant.......................2

10
11
      B.    Lieutenant ███ Was Captain of Operations Division Until April 2022 and Since 2022, As A Lieutenant In Charge of Records, Is Part Of The Police Command Staff With Knowledge Of Police Practices................3

12
13
III.  THIS COURT IS AUTHORIZED TO DISQUALIFY AN ATTORNEY WHO HAS A CONFLICT OF INTEREST. .........................................5

14
      A.    California Law Governs Grounds To Disqualify Mr. Gage And Other Lawyers From His Firm....................................5

15
16
      B.    This Court Has The Inherent Authority To Disqualify An Attorney And His Law Firm To Preserve The Public Trust And Integrity Of The Profession.........................................6

17
18
      C.    The Defendant Public Entity Has Standing To Move To Disqualify Mr. Gage .............................................7

19
20
      D.    Mr. Gage Must Be Automatically Disqualified Where His Claims On Behalf Of The Plaintiffs Implicate Lieutenant ███ As The City's Witness.................................................8

21
22
      E.    Attorney's Gage's Representation of Plaintiffs Violates Lieutenant █████' Confidence Regarding The City's Policies, Procedures And Activities...........................................11

23
24
      F.    Plaintiffs and Lieutenant ████ May Not Give Consent To The Dual Representation Or Waive The Conflict Of Interest. ..............13

25
IV.   CONCLUSION .................................................14

26
27
28

<u>TABLE OF AUTHORITIES</u>

Page(s)

Other Authorities

<u>Adams v. Aerojet-General Corp.</u>,
  86 Cal.App.4th 1324 (2001.)........................................................... 11, 12

<u>Beltran v. Avon Products, Inc.</u>,
  867 F.Supp.2d 1068 (C.D. CA 2012) ................................................ 5

<u>Blue Water Sunset, LLC v. Markowitz</u>,
  192 Cal.App.4th 477 (2011).............................................................. 9

<u>City & County of San Francisco v. Cobra Solutions, Inc.</u>,
  38 Cal.4th 839 (Cal. 2006) ............................................................... 6

<u>Comden v. Sup.Ct. (Doris Day Distrib. Co.)</u>,
  20 Cal.3d 906 (Cal. 1978) ................................................................ 6

<u>Concat LP v. Unilever, PLC</u>,
  350 F.Supp.2d 796 (N.D.Cal.,2004) ................................................ 7

<u>County of Los Angeles v. Superior Court</u>,
  (1990) 222 Cal.App.3d 647............................................................... 6, 8

<u>Dino v. Pelayo</u>,
  145 Cal.App.4th 347 (2006).............................................................. 7

<u>Erickson v. Newmar Corp.</u>,
  87 F.3d 298 (9th Cir. 1996).............................................................. 6

<u>Flatt v. Superior Court</u>,
  9 Cal.4th 275 (Cal.,1994.) ............................................................... 8, 9, 11, 12

<u>Great Lakes Construction, Inc. v. Burman</u>,
  186 Cal.App.4th 1347 (2010)............................................................ 7

<u>Hollywood v. Sup.Ct. (People)</u>,
  43 Cal.4th 721 (Cal. 2008) ............................................................... 6

<u>In re County of Los Angeles</u>,
  223 F.3d 990 (9th Cir. 2000)............................................................ 5

<u>Kennedy v. Eldridge</u>,
  201 Cal.App.4th 1197 (2011)............................................................ 7, 11

<u>Klemm v. Superior Court</u>,
  75 Cal.App.3d 893 (1977.) ............................................................... 13

<u>Lightbourne v. Dugger</u>,
  829 F.2d 1012 (11th Cir. 1987)......................................................... 9

<u>McMillan v. Shadow Ridge at Oak Park Homeowner's Ass'n</u>,
  165 Cal.App.4th 960 (2008).............................................................. 6

<u>Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.</u>,
  36 Cal.App.4th 1832 (1995)................................................................. 7

<u>People ex rel v. SpeeDee Oil Change</u>,
  20 Cal.4th 1135 (Cal. 1999)............................................................ 6, 11

<u>People v. Jones</u>,
  33 Cal.4th 234(Cal., 2004)............................................................. 7, 13

<u>Rodriguez v. W. Publ'g Corp.</u>,
  563 F.3d 948 (9th Cir. 2009)................................................................ 5

<u>S.E.C. v. King Chuen Tang</u>,
  831 F.Supp.2d 1130 (N.D.Cal., 2011) ................................................ 7

<u>Sharp v. Next Entertainment, Inc.</u>,
  163 Cal.App.4th 410 (2008)................................................................. 8

<u>U.S. v. Iorizzo</u>,
  786 F.2d 52 (2nd Cir. 1986.)............................................................. 7, 9

<u>U.S. v. Williams</u>,
  81 F.3d 1321 (4th Cir. 1996)............................................................ 8, 13

<u>United States ex rel. Stewart on behalf of Tineo v. Kelly</u>,
  870 F.2d 854 (2d Cir.1989)........................................................... 7, 9, 13

<u>United States v. Baker</u>,
  10 F.3d 1374 (9th Cir. 1993)............................................................. 12

<u>United States v. Locascio</u>,
  6 F.3d 924 (2d Cir. 1993).................................................................. 8

<u>United States v. Moscony</u>,
  927 F.2d 742 (3d Cir. 1991)............................................................... 8

<u>Wheat v. U.S.</u>,
  486 U.S. 153 (U.S., 1988)............................................................... 7, 13

Rules

California Rules of Professional Conduct. Rule 1.7 ................................. 8

Rule 1.7(d)(3) ........................................................................................ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.**   **PLAINTIFFS' ALLEGATIONS IN THIS LAWSUIT ARE A CONFLICT OF INTEREST FOR ATTORNEY BRADLEY GAGE AND HIS LAW FIRM**

Plaintiffs are Tamika King and Robert Adams ("Plaintiffs").  They filed a complaint alleging that in July of 2022, San Bernardino Police Department ("SBPD") officers shot their son and violated his constitutional rights.  [Complaint, ¶2.]  They sued the City of San Bernardino ("City"), police officers, and "managerial, supervisorial, and policymaking employees" of the police department who were "acting with complete authority and ratification" for the City.  [Complaint, ¶8, p. 2:16-21.]  Plaintiffs allege that the defendants attempted to destroy and conceal evidence, such as decedent's cell phone, autopsy reports, and the video and photographs from the autopsy.  [Complaint, ¶16, p. 23-24; ¶19, 5:9-10.]

Plaintiffs further allege that the officers used "poor tactics", and that managerial, supervisorial, and policymaking employees "fail[ed] to train and supervise" the officers.  [Complaint, ¶20, p. 5:11-12, and ¶49(e), p. 11:2-4.]  Plaintiffs also allege that managerial, supervisorial, and policymaking employees knew that the officers "had prior complaints of excessive force, covering up such claims and or writing or making false allegations in police reports and/or other acts of violence or excessive force brought against defendant [the] City", and that the City "ratified and approved the actions" of the officers.  [Complaint, ¶20, p. 5:12-15; and ¶2, p. 2:3-6.]  Plaintiffs further allege that "each and every defendant was the co-conspirator with, and/or agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant."  [Complaint, ¶12, p. 5:5-8.]   Plaintiffs seek punitive damages from these same "managerial, supervisorial, and policymaking employees".

As discussed below, Mr. Gage's representation of the Plaintiffs in this case is an ethical violation because he also represents SBPD Lieutenant ██████, who was the Captain of Operations until April of 2022 and has since been in charge of records,

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

and which conflict cannot be waived.  It is an obvious ethical conflict for Mr. Gage to allege that the police department personnel destroyed and concealed evidence, failed to train officers, and hired and retained officers knowingly with alleged prior complaints of constitutional violations, while concurrently represent Lieutenant ████, who until April of 2022, just three months before the incident, was the Captain of Operations Division, since April of 2022 has been the police Communication and Records Manager, and previously for years was the Field Training Program Supervisor, Department's Personnel & Training Unit Manager, had performed the duties of Patrol Watch Commander, and was responsible for officer training.  As discussed below, Mr. Gage and his law firm must not be permitted to represent the Plaintiffs and must be disqualified from having any further involvement in the Plaintiffs' litigation.

II. **PLAINTIFFS' COUNSEL BRADLEY GAGE ALSO REPRESENTS LIEUTENANT ████████ OF THE SAN BERNARDINO POLICE DEPARTENT WHO IS THE RECORDS MANAGER AND WAS INVOLVED IN ALL ASPECTS OF POLICE OFFICER TRAINING AND HIRING**

    A. **Mr. Gage Represents Lieutenant ████ In His Employment Claims Against The City For Wrongfully Transferring Him From Captain of Operations Division To Lieutenant.**

Attorney Gage and his firm are concurrently representing SBPD Lieutenant ████ in his complaint against the City of San Bernardino for employment retaliation in his position as the Captain until April 2022, when he was made police Lieutenant.  [Exhibit "A", pgs. 008-10; p. 009:3-4.]  Mr. Gage's office served on the City a copy of Lieutenant ████' "DFEH complaint, Notice of Case Closure, and Right to Sue filed against the City of San Bernardino by ████". [Exhibit "A", p. 002.] The Department of Fair Employment & Housing's cover letter enclosing the Right to

Sue Letter was directed to attorney Bradely Gage [Exhibit "A", p. 003], and the Right to Sue letter itself, also dated July 26, 2022, was directed to "███████ c/o Law Offices of Goldberg & Gage".  [Exhibit "A", pg. 006.]

      **B.**    **Lieutenant ████ Was Captain of Operations Division Until April 2022, Then As A Lieutenant In Charge of Records, Is Part Of The Police Command Staff With Knowledge Of Police Practices.**

Lieutenant ████ has been an employee of the SBPD since 1997 to the present. [Declaration of Chief Darren Goodman, ¶10.]  Lieutenant ████ started in 1997 as a reserve officer and became a full-time officer in 2008 and had been promoted over the years.  [Ibid. ¶10, p. 2:24-25.]  Between 2010 to 2012, he was the Problem-Oriented Policing Officer, District Resource Officer, and Vice Investigator.  [Ibid., ¶10, p. 2:25-27.]  As a Police Officer, he held assignments as a Patrol Officer, Field Training Officer, Problem Oriented Policing/District Resource Officer, and Vice Investigator. [Ibid., ¶10, p. 2:27-3:1.]  In 2012, he was certified to the rank of Sergeant, serving as a Patrol Supervisor, Watch Commander, K-9 Unit Supervisor, Field Training Program Supervisor, Cadet Program Supervisor, and Reserve Unit Supervisor.  [Ibid., ¶10, p. 3:1-3.]  He was also assigned as the Department's Personnel & Training Unit Manager, where he was responsible for hiring new police officers and professional staff, as well as providing in-service and continuing education training to all Department personnel.  [Ibid., ¶10, p. 3:3-6.]  He was promoted to the rank of Lieutenant in 2017 and performed the duties of an Executive Officer and Patrol Watch Commander.  [Ibid., ¶10, p. 3:6-8.]  As a Lieutenant, he was also assigned to work for the City Manager, completing special projects and helping to create and facilitate the City's Community Organization and Rebuilding Effort (CORE) task force.  [Ibid., ¶10, p. 3:8-11.]  On January 7, 2019, he was certified as the acting Captain, where he was responsible for all uniformed officers patrol functions as well as the Department's Community Oriented Policing efforts.  [Ibid., ¶10, p. 3:11-14.]  On January 27, 2020,

he was promoted to the rank of Captain of Operations Division, a position he held until April 2022, and reported directly to the Chief of Police.  [Ibid., ¶10, p. 3:11-15.]  In April 2022, he became a Lieutenant again.  [Ibid., ¶10, p. 3:15-16.]  In his capacity as Lieutenant since April of 2022, he has been the Communications and Records Manager which oversees the dispatch and records and is a member of the police departments Command Staff.  [Ibid., ¶10, p. 3:16-18.]

In these various positions Lieutenant ███ has been directly involved in hiring new police officers and providing in-service and continuing education training to police officers.  [Ibid., ¶11, p. 3:19-22.]  Therefore, since at least 2012 through 2022, he was in charge of supervision, hiring, and conducting training of new and existing officers, and in deciding and enforcing police policies and tactics.  [Ibid., ¶11, p. 3:22-28.]  In April 2022, Captain ███ became a Lieutenant again, and is currently in charge of dispatch and records.  [Ibid., ¶10, p. 3:15-18.]  Further, Lieutenant ███ knows the manner in which the SBPD maintains records and evidence; how the SBPD handles and investigates Officer Involved Shootings; how SBPD detectives gather, process, handle, and preserve evidence following an Officer Involved Shooting; the type of evidence that is gathered during the SBPD's investigations; the SBPD's decision-making during the criminal investigation; and how the City handles administrative investigations that arise out from an Officer Involved Shooting.  [Ibid., ¶12, p. 4:1-10.]

Because Lieutenant ███ is directly involved overseeing the Department's records, Plaintiffs' allegations that the police managerial, supervisorial, and policymaking and other personnel "attempted to destroy the evidence" in this case, as well as hide and conceal evidence, including the decedent's mobile phone on July 16, 2022, autopsy reports, and video and photographs from the autopsy [Complaint, ¶16, p. 23-24; ¶19, 5:9-10], all implicate Lieutenant ███' knowledge about how the police maintains records and evidence and conducts its investigation of Officer Involved Shooting.   Moreover, Plaintiffs' allegations against the SBPD's management

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

personnel for inadequate training of officers, for knowingly hiring and retaining personnel with alleged prior history of violating rights, and for using poor tactics, all directly challenge Lieutenant ███' hiring, supervision and training of police personnel and approval of police tactics, not only when he was the Captain of Operations for 2 years until just before the incident, but also during the previous years he was involved in hiring and training of officers. The possibility that Mr. Gage and his office will need to cross-examine Lieutenant ███ either in deposition or at trial regarding hiring, supervision, and training of officers, use of tactics, investigation procedures for Officer Involved Shooting, or on management and maintenance of evidence after the incident, or otherwise question his knowledge or credibility, all creates an inherent conflict of interest for Mr. Gage and his firm, which cannot be waived. Therefore, Mr. Gage and his law firm cannot be permitted to have any involvement in this litigation, and this Court should disqualify Mr. Gage and all attorneys and employees at his law firm from being involved in any capacity in this litigation.

## III.   THIS COURT IS AUTHORIZED TO DISQUALIFY AN ATTORNEY WHO HAS A CONFLICT OF INTEREST.

### A.   California Law Governs Grounds To Disqualify Mr. Gage And Other Lawyers From His Firm.

Federal courts apply the state law in disqualifying an attorney. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). "Attorneys practicing in [the central] district must 'be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto.'" Beltran v. Avon Products, Inc., 867 F.Supp.2d 1068, 1076 (C.D. CA 2012), C.D. Cal. R. 83-3.1.2. The Central District has adopted California's ethical standards governing attorney conflicts of interest. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009), stating "By virtue of the district

court's local rules, California law controls whether an ethical violation occurred".

**B.    This Court Has The Inherent Authority To Disqualify An Attorney And His Law Firm To Preserve The Public Trust And Integrity Of The Profession**

This Court has the inherent authority to disqualify an attorney through its authority "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." People ex rel v. SpeeDee Oil Change 20 Cal.4th 1135, 1145 (Cal. 1999); City & County of San Francisco v. Cobra Solutions, Inc. 38 Cal.4th 839, 846 (Cal. 2006); Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996) (district courts have "an arsenal of sanctions they can impose for unethical behavior," including "disqualification of counsel"); see also People ex rel. Dep't of Corporations v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1145 (1999) ("A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it.")

The paramount justification and ground to disqualify an attorney is preserving public trust in the scrupulous administration of justice and the integrity of the bar, which concern overcomes the right of plaintiffs to select the counsel of their choice. People ex rel v. SpeeDee Oil Change 20 Cal.4th 1135, 1145-46 (Cal. 1999); City & County of San Francisco, supra, 38 C4th at 846; Comden v. Sup.Ct. (Doris Day Distrib. Co.) 20 Cal.3d 906, 915 (Cal. 1978).  "[U]ltimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount.... [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our

1  judicial process.' [Citation.]"   <u>County of Los Angeles v. Superior Court</u> (1990) 222

2  Cal.App.3d 647, 658.   The goal is to remedy and prevent the prejudice caused by the

3  plaintiffs' counsel conflict of interest.   <u>McMillan v. Shadow Ridge at Oak Park</u>

4  <u>Homeowner's Ass'n</u> 165 Cal.App.4th 960, 968 (2008); <u>Hollywood v. Sup.Ct. (People)</u>

5  43 Cal.4th 721, 731 (Cal. 2008).

6  / / /

7          **C.     The Defendant Public Entity Has Standing To Move To**

8                 **Disqualify Mr. Gage**

9          A party seeking to disqualify an attorney merely can show a "fiduciary or quasi-

10  fiduciary relationship … between the attorney and the source of the confidential

11  information." <u>Dino v. Pelayo</u>, 145 Cal.App.4th 347, 353 (2006).    Thus, a party may

12  disqualify counsel even if the moving party is not the counsel's client. <u>S.E.C. v. King</u>

13  <u>Chuen Tang</u>, 831 F.Supp.2d 1130, 1143 (N.D.Cal., 2011), stating "many district

14  courts have invoked the exception …to find that a non-client had standing to seek

15  disqualification based on a conflict with a third party";  <u>Concat LP v. Unilever, PLC</u>,

16  350 F.Supp.2d 796, 818 (N.D.Cal.,2004); <u>Metro-Goldwyn-Mayer, Inc. v. Tracinda</u>

17  <u>Corp.</u>, 36 Cal.App.4th 1832, 1840 (1995), holding that disqualification is appropriate

18  where the moving party is not the attorney's client;  <u>Great Lakes Construction, Inc. v.</u>

19  <u>Burman</u>, 186 Cal.App.4th 1347, 1357 (2010), holding that the moving party need only

20  have personal stake in the motion; <u>Kennedy v. Eldridge</u>, 201 Cal.App.4th 1197, 1204

21  (2011), stating "where the ethical breach is 'manifest and glaring' and so 'infects the

22  litigation in which disqualification is sought that it impacts the moving party's interest

23  in a just and lawful determination of [his or] her claims' [citation], a nonclient might

24  meet the standing requirements to bring a motion to disqualify based upon a third

25  party conflict of interest or other ethical violation."

26          Thus, courts have granted a non-client's motion to disqualify an attorney when

27  that attorney previously represented the moving party's witness, which the attorney

28  may need to cross-examine either in deposition or trial.  <u>United States ex rel. Stewart</u>

on behalf of Tineo v. Kelly, 870 F.2d 854, 856 (2d Cir.1989), (hereinafter "Stweart"); Wheat v. U.S., 486 U.S. 153, 155 (U.S., 1988), followed in People v. Jones, 33 Cal.4th 234, 241(Cal., 2004); U.S. v. Iorizzo, 786 F.2d 52, 57 (2nd Cir. 1986.)  A public entity may move to disqualify counsel who had a conflict of interest with several defendants, although the public entity is not the attorney's client.  Wheat v. U.S., 486 U.S. 153, 155 (U.S., 1988), followed in People v. Jones, 33 Cal.4th 234, 241 (Cal., 2004), even where the defendants waived the conflict.  A party may even move to disqualify a lawyer for contacting the defendant's witness.  County of Los Angeles v. Superior Court (1990) 222 Cal.App.3d 647, 658, ordering that trial court to grant a motion to disqualify the attorney who had contacted the government's expert witness.  Here, the conflict of interest is significant that it infects the proceedings and threatens the City's right to a just determination of the claims, by invading the credibility and confidence of the witnesses.

> **D.    Mr. Gage Must Be Automatically Disqualified Where His Claims On Behalf Of The Plaintiffs Implicate Lieutenant ███ As The City's Witness.**

An attorney has a conflict of interest where the circumstances of the case present "a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Sharp v. Next Entertainment, Inc., 163 Cal.App.4th 410, 426 (2008), internal quotes and emphasis omitted.  California Rules of Professional Conduct. Rule 1.7 "Conflict of Interest: Current Clients" expressly prohibits an attorney from representing a plaintiff in any matter that involves "an assertion of a claim by that client against another client… in the same litigation".  Sharp, supra, 163 Cal.App.4th at 426, citing to Rule 1.7(d)(3); Flatt v. Superior Court, 9 Cal.4th 275, 284 (Cal., 1994.)  Internal citation omitted.

This also means that an attorney must be disqualified if the attorney may need to cross-examine his other client to prove the claims of his plaintiffs. U.S. v. Williams,

81 F.3d 1321, 1324 (4th Cir. 1996) (disqualifying counsel who would have had to cross examine a former client who was a potential witness for the opposing party); <u>United States v. Locascio</u>, 6 F.3d 924 (2d Cir. 1993) (disqualifying counsel who had previously represented a government witness); <u>United States v. Moscony</u>, 927 F.2d 742, 747-48 (3d Cir. 1991) (disqualifying counsel because counsel's duty to former client precludes zealous cross-examination of the former client with whom counsel previously had privileged communication); <u>United States v. Kelly</u>, 870 F.2d 854, 857 (2d Cir. 1989) (holding defense counsel's prior representation of government witness prevented the necessary vigorous cross-examination); <u>Lightbourne v. Dugger</u>, 829 F.2d 1012, 1023 (11th Cir. 1987) (observing that counsel cannot cross-examine a former client because of inherent divided loyalties); <u>Iorizzo</u>, supra, 786 F.2d at 57 (holding that an attorney must be disqualified where the attorney may have to challenge the previous client's honesty.)

In <u>Iorizzo</u>, the government moved to disqualify a defense attorney for conflict of interest where the attorney had previously represented the government's key witness in another case. <u>Iorizzo</u>, supra, 786 F.2d at 57. The government witness' credibility was relevant to the defendant's defenses, and the attorney would have had to question the witness' credibility. "As the government's key witness, Tietz' credibility went directly to the guilt or innocence of the defendant. A key witness' prior statements under oath that cast doubt upon the accuracy of his trial testimony are an obvious subject of potential cross-examination." <u>Ibid.</u>

It also does not matter that the two lawsuits or claims are unrelated. "Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or "automatic" one…. [and] adverse representation is prima facie improper…."]. <u>Flatt</u>, supra, 9 Cal.4th at 285; <u>Blue Water Sunset, LLC v. Markowitz</u>, 192 Cal.App.4th 477, 487 (2011), stating that "If an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances."

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    Here, there can be no doubt that Mr. Gage has a conflict of interest with
2    Lieutenant ███ because Lieutenant ███ is a material witness for the City regarding
3    Plaintiffs' claims.  First, Plaintiffs allege that police personnel "attempted to destroy
4    the evidence" in this case, as well as hide and conceal evidence, including the
5    decedent's cell phone on July 16, 2022, autopsy reports, and video and photographs
6    from the autopsy.  [Complaint, ¶16, p. 23-24; ¶19, 5:9-10.]  Lieutenant ███ has been
7    the Communications and Records Manager which oversees the dispatch and records
8    since April of 2022.  [Chief Goodman, ¶10, p. 3:16-18.]  He has information on how
9    San Bernardino Police Department maintains records and evidence [Chief Goodman,
10   ¶12, p. 4:1-6.]  Plaintiffs' allegations implicate the Lieutenant's knowledge about
11   whether the police destroyed or concealed evidence.

12   Further, Plaintiffs' allegations that the police managerial, supervisorial, and
13   policymaking employees failed to train the officers [Complaint, ¶20, p. 5:12-15; and
14   ¶49.g., p. 11:8], and that they hired and retained police officers who "had prior
15   complaints of excessive force, covering up such claims and or writing or making false
16   allegations in police reports and/or other acts of violence or excessive force brought
17   against defendant CITY" [Complaint, ¶20, p. 5:12-15; and ¶2, p. 2:3-6], all directly
18   implicate Lieutenant ███' role in hiring, training, and supervision  of police officers
19   for years, all through his role as Captain of Operations.  As set forth in the declaration
20   of Chief Goodman, Lieutenant ███ had been a Patrol Officer, Field Training Officer,
21   Problem Oriented Policing/District Resource Officer, and Vice Investigator,  Patrol
22   Supervisor, Watch Commander, K-9 Unit Supervisor, Field Training Program
23   Supervisor, Cadet Program Supervisor, and Reserve Unit Supervisor, and was also
24   assigned as the Department's Personnel & Training Unit Manager, where he was
25   responsible for hiring new police officers and professional staff, as well as providing
26   in-service and continuing education training to all Department personnel.  [Ibid., ¶10,
27   p. 2:27-3:6.]  He was promoted to the rank of Lieutenant in 2017 and performed the
28   duties of an Executive Officer and Patrol Watch Commander.  [Ibid., ¶10, p. 3:6-8.]

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

On January 7, 2019, he was certified as the acting Captain, and on January 27, 2020 was promoted to the rank of Captain of Operations Division where he was responsible for all uniformed officers patrol functions as well as the Department's Community Oriented Policing efforts, and directly reported to the Chief of Police. [Ibid., ¶10, p. 3:11-15.]  He held this position until April 2022. [Ibid., ¶10, p. 3:14.]  In those positions, he also has knowledge about the SBPD handles and conducts investigations of Officer Involved Shootings. [Ibid., ¶12, p. 4:3-10.]

Clearly, plaintiffs allegations that managerial, supervisorial, and policymaking employees failed to properly train officers, or hired or retained officers with alleged "prior complaints of excessive force, covering up such claims and or writing or making false allegations" implicate Lieutenant ███ as a relevant witness to respond to Plaintiffs' complaint.  Mr. Gage and his firm cannot represent Lieutenant Gage in his complaint against the City, while simultaneously cross-examine him about the Plaintiffs' claims about Lieutenant ███' own hiring, training, and supervision of officers, and use of police tactics.  Mr. Gage has a clear conflict of interest.

E. **Attorney's Gage's Representation of Plaintiffs Violates Lieutenant ███' Confidence Regarding The City's Policies, Procedures And Activities.**

A second reason for disqualifying Mr. Gage is "the need to protect the first client's confidential information[; this] requires that the attorney be disqualified from the second representation." People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal.4th 1135, 1146 (Cal., 1999.)  "If a substantial relationship is established [between the lawsuits], the discussion should ordinarily end. The rights and interest of the former client will prevail. Conflict would be presumed; disqualification will be ordered.'" Flatt v. Superior Court, 9 Cal.4th 275, 283 (Cal.,1994.)  The "substantial relationship test is founded on the need to protect against the improper use of client secrets". Id. at 284.  Cases are deemed substantially related wherever "confidential information material to the current dispute would

1   normally have been imparted to the attorney by virtue of the nature of the former

2   representation." Adams v. Aerojet-General Corp., 86 Cal.App.4th 1324, 1332 (2001.)

3   "[D]isqualification is proper where, as a result of a ...representation [of current or

4   former client] ... there is a reasonable probability counsel has obtained information

5   the court believes would likely be used advantageously against an adverse party

6   during the course of the litigation.'" Kennedy, supra, 201 Cal.App.4th at 1205.

7       The "presumption that an attorney has access to privileged and confidential

8   matters relevant to a subsequent representation extends the attorney's disqualification

9   vicariously to the attorney's entire firm." Flatt, supra, 9 Cal.4th at 283.  "It is now

10   firmly established that where the attorney is disqualified from representation due to

11   an ethical conflict, the disqualification extends to the entire firm." Adams v. Aerojet-

12   General Corp., 86 Cal.App.4th at 1333.  The 9th Circuit has already stated that any

13   cross-examination of a former client raises "the possibility of an unwitting disclosure

14   of confidential communications." United States v. Baker, 10 F.3d 1374, 1399 (9th Cir.

15   1993).

16       Here, there is a substantial relationship between Lieutenant ███' work as the

17   Captain of Operations Division and eventual reassignment as a Lieutenant where he

18   is in charge of records, and Plaintiffs' claims that the police (1) destroyed and

19   concealed evidence, and that (2) managerial and supervisor personnel failed to train

20   officers, and hired personnel with previous history of violating rights.  As set forth

21   above and in Declaration of Chief Goodman, Lieutenant ███ has been involved in

22   hiring, retaining, training, and supervising police officers for years, all through 2022.

23   [Chief Goodman Decl. ¶11.]  Moreover, Lieutenant ███ has knowledge about the

24   manner in which the San Bernardino Police Department handles and investigates

25   Officer Involved Shootings.  [Chief Goodman Decl. ¶12.]  Yet, Mr. Gage accuses

26   "managerial, supervisorial, and policymaking employees" of hiding and concealing

27   evidence such as the autopsy report, videos of that autopsy and pictures, when

28   Lieutenant ███ was already in charge of records.  [Complaint, ¶19, p. 5:8-10.]  Mr.

-12-

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

Gage, by representing the Captain of the Operations Divisions and the current Communications and Records Manager, is presumed to have obtained and have access to Lieutenant ▮▮▮▮' knowledge on issues regarding how the SBPD investigates Officer Involved Shooting, how it maintains evidence, how it trains officers, what knowledge it has about the officers it hires and retains, and what tactics it trains its officers.  Mr. Gage's representing the Plaintiffs in this litigation creates a likelihood that he would use confidences from Lieutenant ▮▮▮▮ in this litigation.

### F.    Plaintiffs and Lieutenant ▮▮▮▮ May Not Give Consent To The Dual Representation Or Waive The Conflict Of Interest.

An attorney may not obtain consent from his two clients "where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another." Klemm v. Superior Court, 75 Cal.App.3d 893, 898 (1977.) "As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other." Ibid.

In Stewart, the appellate court granted the government's writ of mandamus and ordered the trial court to disqualify an attorney who had obtained from his client a waiver of conflict of interest.  Stewart, supra, 870 F.2d at 857 (holding that an attorney may not offer to limit the scope of his cross-examination of the witness to certain issues because such limitation was unprofessional.) "It is hard to conceive of a conflict of interest between clients that would not be serious…. there can be no doubt that [attorney] Linn's potential conflict was serious, that his loyalty was divided between a client and a former client, and that representing [client] Tineo would have created a strong appearance of impropriety.  This is no less true simply because [attorney] Linn's representation of the clients did not concern the same matter, … . Two clients' interests

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

in separate matters may be just as opposed, and the potential for conflict just as serious." Ibid.  The Court "emphasizes the primacy of the court's concern for integrity of the process—to the point of reversing for abuse of discretion a district court's refusal, because of party waiver, to disqualify" the attorney.  U.S. v. Williams, 81 F.3d 1321, 1324 (4th Cir. 1996); also Wheat, supra, 486 U.S. at 155 followed in Jones, supra, 33 Cal.4th at 241 (granting the government's motion to disqualify counsel whose clients waived the conflict.)

Here, Mr. Gage and his firm obviously cannot ethically obtain a waiver of the conflict, but even if they did, the waiver cannot be accepted.  The complaint that Mr. Gage had filed on behalf of the Plaintiffs in this case are so adverse to Lieutenant █████' role over the years in training and supervising officers and approving police tactics, all the way through April of 2022, and his role since April of 2022 as a Communications and Records Manager (which covers the July 2022 incident in this litigation) that it would be unthinkable to permit Mr. Gage also to represent the Plaintiffs in any capacity.  The only relief is to disqualify Mr. Gage and his firm from representing Plaintiffs and having any other contact with Plaintiffs or their counsel relating to this litigation.

## IV.   CONCLUSION

Defendant respectfully that this Court disqualify Bradley Gage and all attorneys and employees at the Law Offices of Goldberg & Gage, and order that they not have any involvement or contact with Plaintiffs, their other counsel, or anyone else involved in this litigation regarding this case.  Mr. Gage and his office have a conflict of interest, and the conflict cannot be waived.

1

DATED:  January 20, 2023          CARPENTER, ROTHANS & DUMONT
                                   LLP

2

3

4                                  By:   /s/ *Yaron F. Dunkel*
                                         STEVEN J. ROTHANS

5                                        SCOTT CARPENTER
                                         YARON F. DUNKEL

6                                        Attorneys for Defendant CITY OF SAN
                                         BERNARDINO, a public entity

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF YARON F DUNKEL

I, Yaron F. Dunkel, declare as follows:

1.    I am an attorney-at-law duly licensed to practice before all of the courts of the State of California and am a member in good standing of this court, and an attorney in the law firm of Carpenter, Rothans & Dumont, attorneys of record for Defendant City of San Bernardino, a public employee.

2.    I state the following facts from my personal knowledge, except those facts stated on information and belief which I believe to be true, and if called as a witness I could and would so competently testify thereto under oath.

3.    This Motion is made following a formal meet and confer efforts with Plaintiffs' counsel pursuant to Local Rule 7-3.  On December 30, 2022, I sent Plaintiffs' counsel a detailed correspondence which set forth the grounds for this motion and supporting legal authorities.  I proposed a conference call.  On January 5, 2023, I had a telephone conference with attorney Bradely Gage regarding the issues raised in this motion.  The parties could not agree on the motion.   Therefore, I filed the present motion.

4.    Filed herewith as Exhibit "A" is a true and correct copy of a letter dated July 26, 2022 signed by "Leticia Lopez, assistant to: Bradley C. Gage", enclosing "a copy of the DFEH complaint, Notice of Case Closure, and Right to Sue filed against the City of San Bernardino by ████████".  The Department of Fair Employment & Housing's cover letter that Ms. Lopez provided was directed to "Bradely Gage" and the Right to Sue letter itself, also dated July 26, 2022, was directed to "████ ████ c/o Law Offices of Goldberg & Gage".

5.    Filed herewith as Exhibit "B" is a true and correct copy of the Declaration by City of San Bernardino's Police Chief Darren Goodman, in support of the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES

1

Executed on January 20, 2023, at Los Angeles, California.

2

3

/s/: Yaron F. Dunkel
Yaron F. Dunkel - Declarant

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL BRAD GAGE;
MEMORANDUM OF POINTS AND AUTHORITIES