UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-2206 JGB (SPx)** | Date | March 2, 2023 |
|---|---|---|---|
| Title | *The Estate of Rob Marquise Adams v. City of San Bernardino, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Defendant's Motion to Disqualify Counsel (Dkt. No. 14); and (2) VACATING the March 6, 2023 hearing (IN CHAMBERS)

Before the Court is Defendant City of San Bernardino ("City" or "Defendant") motion to disqualify Plaintiffs The Estate of Rob Marquise Adams' ("Estate"), Tamika King's ("King"), and Robert Adams' ("Adams, Sr.") (collectively, "Plaintiffs") counsel of record Goldberg and Gage, APC. ("Motion," Dkt. No. 14.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion. The hearing set for March 6, 2023 is **VACATED**.

## I. BACKGROUND

On December 15, 2022, Plaintiffs filed this action against defendants City and Does 1 through 10 (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) On January 10, 2023, the City answered. ("Answer," Dkt. No. 11.) The Complaint alleges the following five causes of action: (1) unreasonable seizure of person; (2) civil battery; (3) wrongful death; (4) negligence; and (5) violation of the Bane Act. (See Compl.) On January 10, 2023, the City answered. ("Answer," Dkt. No. 11.)

On January 20, 2023, City filed the Motion and the following documents in support of the Motion:

- Declaration of Yaron F. Dunkel ("Dunkel Decl.," Dkt. No. 14) along with the following attached exhibits: a copy of Brian Pellis' employment discrimination complaint against the City and the declaration of the City's Police Chief Darren Goodman ("Goodman Decl.," Dkt. No. 14-2).

On February 6, 2023, Plaintiffs filed their opposition. ("Opposition," Dkt. No. 15.) In support of their Opposition, Plaintiffs filed the following:

- Declaration of Bradley Gage ("Gage Decl.," Dkt. No. 15-1);
- Expert Declaration of Ellen A. Pansky ("Pansky Decl.," Dkt. No. 15-2);
- Declaration of Christopher O'Neal ("O'Neal Decl.," Dkt. No. 15-3);
- Declaration of Milad Sadr ("Sadr Decl.," Dkt. No. 15-4);
- Declaration of Robert Adams ("Adams, Sr. Decl.," Dkt. No. 15-5);
- Declaration of Tamika King ("King Decl.," Dkt. No. 15-6);
- Declaration of Brian Pellis ("Pellis Decl.," Dkt. No. 15-7); and
- Plaintiffs' objections to Chief Darren Goodman's Declaration ("Objections to Goodman Decl.," Dkt. No. 16).

On the same day, Plaintiffs filed a notice of errata and submitted a correct copy of Bradly Gages' declaration. ("Gage Decl. 2," Dkt. No. 17.) On February 13, 2023, the City replied. ("Reply," Dkt. No. 18.) In support of its Reply, the City filed evidentiary objections to Plaintiffs' evidence filed in support of their opposition.[1] ("City's Objections," Dkt. No. 18-1.)

## II.   LEGAL STANDARD

**A.   Motion to Disqualify Counsel**

Federal courts apply state law to decide motions to disqualify. Advanced Messaging Tech., Inc. v. EasyLink Servs. Int'l Corp., 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012) (citing In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000)). Pursuant to Rule 83-3.1.2 of the Local Rules of the Central District of California, attorneys who practice in this district must "comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." L.R. 83-3.1.2.

A "motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice." Reading Int'l, Inc. v. Malulani Grp., Ltd., 814 F.3d 1046, 1053 (9th Cir. 2016) (quoting In re Cnty. of L.A., 223 F.3d at 995). It is also "a drastic measure that is generally disfavored and imposed only when absolutely necessary." Beltran v. Avon Prods., Inc.,

---

[1] The City objects to the declaration of Ellen A. Pansky, esq., Plaintiffs' expert. Because the Court does not rely on Ms. Pansky's declaration, the City's objections are **DENIED AS MOOT**. The City also objects to certain statements in Bradley Gage's declaration. Because the Court does not rely on those statements, the City's objections are **DENIED AS MOOT**.

867 F. Supp. 2d 1068, 1077 (C.D. Cal. 2012).  "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny."  <u>Optyl Eyewar Fashion Int'l Corp. v. Style Cos.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985).  A court must weigh "factors [such] as the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden on the client if required to replace disqualified counsel, and the potential that tactical abuse underlays the disqualification proceeding."  <u>Antelope Valley Groundwater Cases</u>, 30 Cal. App. 5th 602, 616 (2018).  "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar."  <u>People v. SpeeDee Oil Change Sys., Inc.</u>, 20 Cal. 4th 1135, 1145 (1999).  Ultimately, the decision to disqualify counsel is within the district court's discretion.  <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980).

"Motions to disqualify generally arise in one of two contexts: (1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client; and (2) in cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests" or an attorney "simultaneously represents clients who have conflicting interests," "regardless of whether the simultaneous representations have anything in common."  <u>W. Sugar Coop. v. Archer-Daniels-Midland Co.</u>, 98 F. Supp. 3d 1074, 1080, 1082 (C.D. Cal. 2015).  "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."  <u>SpeeDee Oil</u>, 20 Cal. 4th at 1139.

**B. Simultaneous Representation**

"Where an attorney concurrently represents clients with directly adverse interests, in the same or wholly unrelated matters, the duty of loyalty requires disqualification in all but few instances."  <u>Sharp v. Next Ent., Inc.</u>, 163 Cal. App. 4th 410, 428 (2008).  "Thus, an attorney cannot represent a client in one matter and simultaneously sue that client in an unrelated matter."  <u>Id.</u>  "Even though the simultaneous representations may have <u>nothing</u> in common, and there is <u>no</u> risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be <u>required</u>.  Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a <u>per se</u> or 'automatic' one."  <u>Flatt v. Superior Ct.</u>, 9 Cal. 4th 275, 284 (1994).  But a lawyer may represent both clients if he obtains informed written consent.  California Rule of Professional Conduct 1.7(a)-(b).  "The principle of loyalty is for the <u>client's</u> benefit; most courts thus permit an attorney to continue the simultaneous representation of clients whose interests are adverse as to unrelated matters provided full disclosure is made and both agree in writing to waive the conflict."  <u>Flatt v. Superior Ct.</u>, 9 Cal. 4th at 285 n.4.

### III.  DISCUSSION

The City moves to disqualify Plaintiff's counsel Bradley Gage ("Gage") and all attorneys and employees at the law offices of Goldberg & Gage, APC, based on simultaneous representation under California Rule of Professional Conduct 1.7(d)(3) ("Rule 1.7(d)(3)").  (See

Mot.) Representation of "current clients" is permitted under Rule 1.7 if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Rule 1.7(d)(3). The City asserts that Mr. Gage and his firm have a conflict of interest caused by their concurrent representation of: (1) Plaintiffs in this matter in which they allege that the City of San Bernardino Police Department ("SBPD") officers shot their son, Rob Marquise Adams ("Adams"), and violated his constitutional rights; and (2) Lieutenant Brian Pellis ("Lt. Pellis") in his employment discrimination case against the City. (Id.)

According to the City, because Lt. Pellis was an SBPD Captain of Operations until April 2022 and since then a Lieutenant in charge of police records, he has confidential information about SBPD's collection and maintenance of evidence, police policies, and police procedures regarding officer training and investigations of officer involved shootings. (Id. at 2; Goodman Decl. ¶¶ 10-12.)[2] Thus, the City argues, there is a likelihood that Mr. Gage will use confidential information obtained from Lt. Pellis in his representation of Plaintiffs in this action. (Id. at 13.) The City also asserts that Lt. Pellis is a material witness for the City in Plaintiffs' action, and thus, Mr. Gage and his firm cannot represent Lt. Pellis in his employment case against the City, while simultaneously cross-examine him about Plaintiffs' claims. (Id. at 11.) Plaintiffs counter that Lt. Pellis has no involvement, knowledge, or evidence regarding Plaintiffs' lawsuit or the alleged police shooting of Mr. Adams, and thus has no information to serve as a witness in Plaintiffs' action. (Opp'n at 4; Pellis Decl. ¶¶ 3-11.) Plaintiffs further contend that although there is not a conflict of interest, Plaintiffs have obtained written informed consent from Lt. Pellis and Plaintiffs. (Opp'n at 20-21.)

1. Standing

The parties dispute whether the City has standing to bring a motion to disqualify. Plaintiffs argue that the City lacks standing to move to disqualify because it has never been a client of Mr. Gage or his firm. (Opp'n at 11-17.) The City argues that it has standing because it has a personal stake in the motion and the conflict of interest is obvious. (Reply at 7-9.)

---

[2] Plaintiffs object to Chief Goodman's declaration on lack of foundation, speculation, and hearsay. Chief Goodman declares that based on his experience at various police departments and after reviewing Lt. Pellis' job positions and ranks with the City, he is familiar with the various positions that Lt. Pellis has held at SBPD, the scope of work and responsibilities that those positions entail, and he describes what Lt. Pellis did in those roles. (Goodman Decl. ¶¶ 9, 11, 12.) Plaintiffs argue that this information is speculation and lacks foundation because responsibilities at different departments vary and Chief Goodman did not join SBPD until June 6, 2022, after the shooting of Mr. Adams. (Objections to Goodman Decl. at 1.) Because Chief Goodman declares that the facts in his declaration are stated from his own personal knowledge, his 31 years of experience as a peace officer, his various positions in other city police departments, and has reviewed Lt. Pellis' job positions and ranks with the City, the Court **OVERRULES** Plaintiffs' objections.

"A 'standing' requirement is implicit in disqualification motions. Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." Great Lakes Constr., Inc. v. Burman, 186 Cal. App. 4th 1347, 1356 (2010). Here, the City has not had any attorney-client relationship with Mr. Gage or his firm. (Gage Decl. 2 ¶¶ 1-2.) "[A]bsent an attorney-client relationship, the moving party must have an expectation of confidentiality." Great Lakes Constr., Inc., 186 Cal. App. 4th at 1356. "[S]ome sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information." Id. Here, the City does not argue that it had a prior confidential relationship with Mr. Gage or his firm. (See Mot.)

A nonclient may bring a motion to disqualify based on a third-party conflict of interest or ethical violation in a case "where the ethical breach is manifest and glaring and so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of his or her claims." Kennedy v. Eldridge, 201 Cal. App. 4th 1197, 1204 (2011) (internal citations omitted). Where an "attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." Id. at 1205. "But the non-client must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." Great Lakes Constr., Inc., 186 Cal. App. 4th at 135 (stating that "imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic").

Here, the City asserts that its interest in this case is that Mr. Gage's representation of Lt. Pellis, a managerial, supervisorial, and policymaking employee of the City, who has "confidential information about the City's policies and procedures," gives Mr. Gage access to confidential information that will be "used against Lt. Pellis in some capacity" and will be used in Plaintiffs' lawsuit to assert that SBPD's "hiring, supervision, management of police officers and tactics are negligent." (Mot. at 6, 9.) The Court is unpersuaded. The City's concerns are merely hypothetical. The City has not provided any evidence that Lt. Pellis has any confidential information about Plaintiffs' claims as they relate to Mr. Adams' death, and the City has no evidence that Lt. Pellis has shared confidential information with Mr. Gage. Indeed, Lt. Pellis declares that he has no knowledge or evidence regarding Plaintiffs' case, and that at the time of Mr. Adams' death and since then, he has not supervised the involved officers as they have not been in his chain of command. (Pellis Decl. ¶¶ 3-7, 9.) Furthermore, Mr. Gage declares that Lt. Pellis has not provided him with any confidential information regarding Plaintiffs' claims. (Gage 2 Decl. ¶ 11.)

Moreover, under Rule 1.7(d)(3), which the City argues Mr. Gage has breached, representation is permitted if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding." Rule 1.7(d)(3). As stated above, the City is not and has never been Mr. Gage's

client, thus Mr. Gage's representation of Plaintiffs and Lt. Pellis in unrelated lawsuits does not trigger Rule 1.7(d)(3) because Mr. Gage is not suing any of his clients. And although Lt. Pellis is a City employee, the Court is satisfied that Plaintiffs' claims does not implicate Lt. Pellis because Lt. Pellis submitted a declaration asserting that he was not and is not involved in Mr. Adams' shooting in any manner. (Pellis Decl. ¶¶ 3-7, 9.) Thus, the Court is unable to find that there is an ethical breach so "manifest and glaring . . . that it impacts the [City's] interest in a just and lawful determination of" its claims. Kennedy v. Eldridge, 201 Cal. App. 4th at 1204. Accordingly, the Court finds that the City lacks standing to bring its motion to disqualify.

   2. **Conflict of Interests**

Even if the Court found that the City had standing to brings its Motion, its Motion would still fail. The City argues that a conflict of interest exists under the adverse interest test and under the substantial relationship test. (Reply at 2-6.)

   a. **Adverse Interests**

For there to be an ethical breach where an attorney concurrently represents clients, the clients must have "directly adverse interests" or there "is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client." Sharp, 163 Cal. App. 4th at 428; see Rule 1.7(a)-(b). An adverse interest is an actual or potential conflict. Havasu Lakeshore Invs., LLC, 217 Cal. App. 4th at 779. A "mere hypothetical conflict is insufficient"; there must be a "reasonable likelihood an actual conflict will arise." Id. "[D]irect adversity can arise when a lawyer cross-examines a non-party witness who is the lawyer's client in another matter, if the examination is likely to harm or embarrass the witness." Rule 1.7, comment 1. In situations where there is no direct adversity, a conflict of interest can exist where "there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships." Rule 1.7, comment 4. "If competent evidence does not establish such a conflict, the attorney is not disqualified for a conflict." Sharp, 163 Cal. App. 4th at 426.

The City asserts that there is a conflict because Lt. Pellis is a material witness for the City in Plaintiffs' claims and Mr. Gage's simultaneous representation of Plaintiffs and Lt. Pellis invades the credibility of Lt. Pellis. (Mot. at 8.) The City asserts that because Lt. Pellis has been the Communications and Records Manager since April 2022, which oversees dispatch and records, he has information on how SBPD maintains records and evidence. (Id. at 10; Goodman Decl. ¶¶ 10-12.) The City argues that Plaintiffs' allegations that the police destroyed or concealed evidence implicates Lt. Pellis' records knowledge. (Id. at 10.) The City also argues that Plaintiffs' allegations against SBPD's management personnel for inadequate training of officers, for knowingly hiring and retaining personnel with prior history of violating rights, and for using poor tactics, all directly challenge Lt. Pellis' hiring, supervision, and training of police personnel and approval of police tactics, not only when he was the Captain of Operations for two

years until a few months before the shooting of Mr. Adams, but also during the previous years that he was involved in the hiring and training of officers. (Id. at 5.)

Plaintiffs argue that the allegations in their Complaint are not made against Lt. Pellis and that the City is manufacturing a conflict by arguing that Lt. Pellis is a witness in Plaintiffs' case. (Opp'n at 10, 20; O'Neal Decl. ¶ 8.) Plaintiffs assert that Lt. Pellis is not a relevant witness in Plaintiffs' case because Lt. Pellis has declared that he has no knowledge of or involvement in the shooting of Mr. Adams. (Opp'n at 10, 20; Pellis Decl. ¶¶ 4-9.) The City argues that it is immaterial that Lt. Pellis was not directly involved in investigating the shooting of Mr. Adams, because he has knowledge about the City's policies and procedures surrounding such investigations and handling of evidence related to officer-involved shootings. (Reply at 5.) The Court doubts that Lt. Pellis is a "material witness" for the City given that Lt. Pellis asserts that he has no knowledge of or involvement in the shooting of Mr. Adams and the City did not submit any declaration or other evidence demonstrating that Lt. Pellis is or would be a witness in Plaintiffs' action. The City only submitted a declaration by Police Chief Goodman where he describes Lt. Pellis' scope of work and responsibilities in his various roles based on his review of Lt. Pellis' job positions and ranks within the City. (Goodman Decl. ¶¶ 8-9.)

Furthermore, even if there was an actual or potential conflict, Mr. Gage has obtained written informed consent by Lt. Pellis and Plaintiffs. Under Rule 1.7, "a lawyer shall not, without informed written consent from each client . . . represent a client if the representation is directly adverse to another client in the same or a separate matter" or "if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client." Rule 1.7(a)-(b). "[W]here an attorney's potentially conflicting representations are simultaneous . . . [t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of loyalty, rather than confidentiality." Antelope Valley Groundwater Cases, 30 Cal. App. 5th 602, 617 (2018). "[B]ecause the right to nonconflicted counsel belongs to the client, the client may consent to an attorney undertaking simultaneous representation of another client with potential (or even actual) adverse interests." Id. Permitting a client to give informed consent to conflicting representation "is a sensible feature of the law, for it recognizes the autonomy of individuals to make reasoned judgments about the trade-offs that are at stake." Sharp, 163 Cal. App. 4th at 430.

Here, Plaintiffs and Lt. Pellis have provided Mr. Gage's law firm written informed consent. (Opp'n at 21.) Plaintiffs Mr. Adams, Sr. and Ms. King each declare that after the City made its conflicts claim in this case, they consulted independent counsel who was made familiar with the facts of their lawsuit and was provided with a copy of their lawsuit and the City's Motion. (Adams, Sr. Decl. ¶ 8; King Decl. ¶ 8.) The independent counsel did not see any potential conflict, reviewed a waiver given to Mr. Adams, Sr. and Ms. King, and believed that the waiver was appropriate for them to sign in light of the City's allegations and the fact that Plaintiffs want Mr. Gage and his firm to represent them. (Id.) Mr. Adams, Sr. and Ms. King assert that their litigation costs would increase if they were to obtain another lawyer. (Id.) Similarly, Lt. Pellis declares that after the City "made its conflict claims in this case," he signed a waiver of conflict of interest with Mr. Gage and his firm, and that waiver was reviewed by

independent counsel before he signed it. (Pellis Decl. ¶ 12.) Accordingly, even if there was an actual or potential conflict, the Court **DENIES** the Motion because Plaintiffs and Lt. Pellis have given their written informed consent.

### 3. Substantial Relationship

In addition to arguing that there is an adverse interest relationship between Plaintiffs and Lt. Pellis, the City also argues that there is a conflict of interest under the substantial relationship test. (Mot. at 11-13.) The Court disagrees.

The substantial relationship test is inapplicable to the circumstances before the Court because it is a test that courts apply in successive representation cases. "The prohibition against concurrent representation of adverse parties is broader than the prohibition against successive representation of adverse parties, the latter applying only if there is a 'substantial relationship' between the successive matters." Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F. Supp. 2d 914, 919 (N.D. Cal. 2003) (quoting Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal. App. 4th 223, 230 (1999)). "Concurrent representation is evaluated under a more stringent standard than successive representation because the former involves not only the concern of a litigant obtaining a practical advantage in the latter litigation through e.g., the acquisition of confidential information gained from the counsel's prior representation, but also broader duty of undivided loyalty owed to the client and public confidence in the legal profession." Id.

In successive representation cases, "the chief fiduciary value jeopardized is that of client confidentiality." Antelope Valley Groundwater Cases, 30 Cal. App. 5th at 617. Absent a client's informed consent, successive representation warrants disqualification "under two situations: (1) the attorney in fact has adverse confidential information or (2) the attorney's acquisition of confidential information is presumed because the prior and present cases are substantially related." Beltran, 867 F. Supp. 2d at 1077. In contrast, as noted above, the ban on concurrent representations of clients with conflicting interests (absent informed written consent) is directed at preserving the attorney's duty of loyalty (rather than the duty of confidentiality) to the client. Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 819 (N.D. Cal. 2004). Accordingly, because the City argues that Mr. Gage's concurrent representation of Plaintiffs in this action and Lt. Pellis in his employment case is a conflict of interest, the Court need not apply the substantial relationship test. The Court already applied the more stringent standard of concurrent representation above.

In sum, the Court concludes the City does not have standing to brings it Motion, and even if it did, there is no conflict of interest because Mr. Gage's clients have provided informed written consent. Accordingly, the Court **DENIES** the Motion.

//
//
//

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion.  The hearing set for March 6, 2023 is **VACATED**.

**IT IS SO ORDERED.**